J-A12021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER G. YANAKOS, SUSAN KAY YANAKOS AND WILLIAM RONALD YANAKOS, HER HUSBAND | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | |
| | : | No. 1331 WDA 2016 |
| | : | |
| UPMC, UNIVERSITY OF PITTSBURGH PHYSICIANS, AMADEO MARCOS, M.D. AND THOMAS SHAW-STIFFEL, M.D. | : : : : | |

Appeal from the Order August 29, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-15-022333

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.: **FILED JULY 26, 2017**

Christopher G. Yanakos, Susan Kay Yanakos, and William Ronald Yanaoks (collectively "Appellants") appeal from the August 29, 2016[1] order entered in favor of Appellees, UPMC, University of Pittsburgh Physicians, Amadeo Marcos, M.D., and Thomas Shaw-Stiffel, M.D. (collectively

---

[1] There appears to be an error on the lower court docket, which suggests that the order granting judgement on the pleadings was filed on July 15, 2016. The order was dated August 29, 2016. Although no Pa.R.C.P. 236 notice was entered on the docket, the September 7, 2016 notice of appeal may be considered timely. **See** Pa.R.A.P. 903(a) (providing that notice of appeal shall be filed within 30 days after entry on the docket of the order from which appeal is taken); Pa.R.A.P. 108(b) (providing that date of entry of the order shall be the day on which the clerk makes the notation on the docket that notice of the entry of the order has been given).

"Appellees"), following a grant of judgment on the pleadings. After careful review of the parties' briefs and the record below, we are constrained to affirm.

We adopt the following statement of relevant facts and procedure garnered from the trial court's opinion, which in turn is supported by the record.

This matter concerns medical treatment that was performed in September [] 2003. At said time, [Appellant] Christopher Yanakos [("Christopher")] volunteered to donate a lobe of his liver to his mother, [Appellant] Susan Yanakos [("Susan")], as she was experiencing problems with her liver [due to Alpha-1 Antitrypsin Deficiency ("AATD")][2] and in need of a donation. [Prior to the surgery, Appellant Christopher advised Appellee Thomas Shaw-Stiffel, M.D. ("Appellee Shaw-Stiffel") that other members of his family had AATD, although Christopher was unsure whether he too had the disorder. In a letter of August 2003, Appellee Shaw-Stiffel wrote to Appellee Amadeo Marcos, M.D., documenting the family history of the disorder and advising to await additional laboratory test results before moving forward.] [] [Appellant] Christopher underwent various evaluations to determine whether his liver would be a suitable replacement.

[] [Appellants] allege that [days after Appellee Shaw-Stiffel's letter in August 2003,] [Appellant]-son Christopher tested positive for AATD [], establishing that his liver was not functioning properly. [] [Appellants] further allege that the existence of AATD disqualified Christopher as a potential donor and that the liver donation should have never proceeded with Christopher as the donor.

_____

[2] Alpha-1 Antitrypsin Deficiency ("AATD") is a genetic disorder, which occurs when the liver fails to produce sufficient Alpha-1 Antitrypsin, a protein that protects the lungs from an enzyme which, left unchecked, can attack healthy lung tissue. Complaint, 12/17/15 at 2-3. This can cause emphysema. *Id*. AATD can also cause cirrhosis or liver failure. *Id*.

[Appellants] assert that it was not until June [] 2014 when [Susan again experienced problems with her liver that] they first discovered that [Appellant]-son Christopher had tested positive for AATD in the pre-surgery testing in August [] 2003. [Appellants] further assert that [] [Appellees] maintained this information in the [Appellant]-son's file since the testing of August [] 2003. [] [Appellants'] complaint points to the aforesaid finding with Christopher's test results to charge [] [Appellees] with allegations of negligence and lack of informed consent.

[] [Appellees] vigorously deny the allegations advanced by [] [Appellants]; denying that [Appellant]-son was not a suitable donor. Additionally, [] [Appellees] raise the affirmative defense of the statute of limitations, asserting that any perceived negligence occurred during 2003, well over the two[-]year statute of limitations available to [] [Appellants] for their claim of negligence.

[] [Appellees] recognize the statute of repose and [] [Appellant's] claim to an extended period of seven [] years to file suit, but find the effective date applicable in the case *sub judice* as March 20, 2002. [] [Appellees] maintain that [] [Appellants] failed to meet their seven[-]year filing period by more than six [] years. [] [Appellants] filed suit on December 17, 2015, well past an extended date under the statute of repose of March 20, 2009, and even more than seven [] years past the date [Appellants] claim of August 2003.

[In December 2015, Appellants filed a complaint against Appellees for damages arising out of the incident described above. In the complaint, Appellants Christopher and Susan both alleged that their injuries, including decreased pulmonary functionality, were a result of Appellees' medical malpractice and lack of informed consent. Also in the complaint, Susan's husband, William Ronald Yanakos, alleged that the Appellees' negligence resulted in a lack of consortium.] [] [Appellants] filed their certificates of merit as to the individual doctors and UPMC [in December 2015]. [] UPMC filed an answer and new matters [in March 2016], for each individual [Appellee, and Appellants filed a reply to new matter in May 2016].

[In July 2016], the [Appellees] filed a motion for judgment on the pleadings and brief in support. [Appellants filed a memorandum of law in opposition to Appellees' motion on the pleadings and therein argued that (1) the foreign object exception to the MCARE Act statute of repose creates an unconstitutional classification of plaintiffs in violation of the equal protection and due process clauses of the Pennsylvania and United States Constitutions, (2) the statute of repose unconstitutionally violates Pennsylvania's open courts guarantee, and (3) Appellees owed Appellants a continuing duty of care.] Following review of the parties' briefs and [] argument [in August 2016], [the trial court] granted [] [Appellees'] motion for judgment on the pleadings.

Trial Court Opinion, 11/3/2016, at 1-3 (unnecessary capitalization omitted).

Appellants timely filed the instant appeal and filed a court-ordered Pa.R.A.P. 1925(b) statement. The court issued a responsive opinion.

Appellants present the following issues for our review:

1. The MCARE statute of repose violates equal protection because it makes arbitrary and capricious distinctions between similarly situated plaintiffs based only on the nature of the defendant physician's negligence.

2. The arbitrary nature of the foreign object exception deprives potential plaintiffs of their right to seek redress for their injuries in violation of the due process protections of the United States and Pennsylvania Constitutions.

3. The statute of repose violates the open courts provision of the Pennsylvania Constitution.

4. The Appellees had a continuing duty to inform Appellants of the test results. As such, the repose period did not begin until Appellants discovered the results.

Appellant's Brief at 4-5 (unnecessary capitalization omitted).

This Court's standard of review when considering the grant of a motion for judgment on the pleadings is as follows:

Entry of judgment on the pleadings is permitted under [Pennsylvania Rule of Civil Procedure 1034] which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Booher v. Olczak*, 797 A.2d 342, 345 (Pa. Super. 2002) (citing *Kelaco v. Davis & McKean*, 743 A.2d 525, 528 (Pa. Super. 1999)). "The grant of a motion for judgment on the pleadings will be affirmed by an appellate court only when the moving party's right to succeed is certain and the case is so free from doubt that a trial would clearly be a fruitless exercise." *Swift v. Milner*, 538 A.2d 28, 31 (Pa. Super. 1988) (citation omitted).

Appellants' first three issues challenge the statute of repose included in the Medical Care Availability and Reduction of Error Act ("the MCARE Act"), effective March 20, 2002, which states, in relevant part:

**§ 1303.513. Statute of repose**

(a) General rule.--Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.

(b) Injuries caused by foreign object.--If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.

40 P.S. § 1303.513.

Our Supreme Court has explained the significance of statutes of repose as follows:

> A statute of repose ... limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.

*Abrams v. Pneumo Abex Corp.*, 981 A.2d 198, 211 (Pa. 2009) (citing *City of McKeesport v. Workers' Compensation Appeal Board (Miletti)*, 746 A.2d 87, 91 (Pa. 2000) (citations and emphasis omitted)).

Subsection 1303.513(a) of the MCARE Act statute of repose sets forth a maximum allowable period of time (seven years) to file medical professional liability claims, and this time period commences on the date of the act of alleged negligence. *Matharu v. Muir*, 86 A.3d 250, 263 (Pa. Super. 2014). Subsection 1303.513(b) of the statute permits the filing of medical malpractice claims beyond seven years after the date of the alleged negligence in the case of a foreign object left in a patient's body. *Id*. at 265. If the MCARE Act statute of repose is applicable and a claimant does not meet this exception, all claims pursuant to the alleged negligent action

are time-barred pursuant to 1303.513(a). ***Bulebosh v. Flannery***, 91 A.3d 1241, 1243 (Pa. Super. 2014).[3]

In the instant case, the MCARE statute of repose is applicable as the alleged negligent action, the surgery, occurred in September 2003. Complaint, 12/17/15, at 5. Appellants filed their complaint in December 2015, over twelve years after the surgery. Accordingly, Appellants' claims are time-barred. Nevertheless, Appellants present a series of arguments challenging the constitutionality of this exception.[4]

As an initial matter, we note that legislative enactments, such as the MCARE Act statute of repose, enjoy a strong presumption of constitutionality. ***Edmonds by James v. W. Pennsylvania Hosp. Radiology Assocs. of W. Pennsylvania P.C.***, 607 A.2d 1083, 1087 (Pa. Super. 1992). A "party raising a constitutional challenge has a heavy burden of rebutting the presumption of constitutionality and demonstrating that the statute clearly, plainly, and palpably violates constitutional precepts." ***Dranzo v. Winterhalter***, 577 A.2d 1349 (Pa. Super. 1990).

---

[3] Subsection 1303.513(c) of the MCARE Act statute of repose also permits the filing of medical malpractice claims beyond seven years after the date of the alleged negligence in the case of minor patients. 40 P.S. § 1303.513(c).

[4] Appellants asserted before the trial court that the MCARE statute of repose was inapplicable but have abandoned that argument on appeal. ***See*** Plaintiffs' Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings, 8/22/12016, at 2-13.

Appellants' assert in their first claim that the MCARE Act statute of repose violates the equal protection guarantees of the United States and Pennsylvania Constitutions, as the foreign object exception, which permits certain plaintiffs to seek remedy in the courts beyond the normal repose period, creates a classification that is under-inclusive and prevents similarly situated plaintiffs from seeking relief. Appellants' Brief at 17-33. Appellants do not suggest that any of the liver tissue in the underlying surgeries of Appellant Susan or Appellant Christopher is akin to foreign objects. Rather, Appellants' argue that the exception exists to protect plaintiffs who typically cannot learn of a negligent act in seven years of diligence. Similarly, according to Appellants, plaintiffs whose test results are undisclosed cannot discern negligence within the statute's outlined timeframe. *Id*. at 21, 25.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "The equal protection provisions of the Pennsylvania Constitution[5] are analyzed [] under the

_____

[5] Article 1, § of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Article 1, § 26 provides: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution." *Love v. Borough of Stroudsburg*, 597 A.2d 1137, 1139 (Pa. 1991) (citing *James v. Southeastern Pennsylvania Transportation Authority*, 477 A.2d 1302 (Pa. 1984)).

We begin an equal protection analysis by determining the type of interest at issue.

> Under a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type - classifications implicating neither suspect classes nor fundamental rights - will be sustained if it meets a "rational basis" test. In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. Finally, in the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review.

*Southeastern Pennsylvania Transportation Authority*, 477 A.2d at 1305-1306 (citations omitted) (some formatting modified).

The MCARE Act statute of repose restricts access to courts. As such, Appellants argue that strict scrutiny should be applied because access to courts is a fundamental right. Appellant's Brief at 20. However, "an unconditional right of access exists for civil cases only when denial of a judicial forum would implicate a fundamental human interest—such as the termination of parental rights or the ability to obtain a divorce." *Abdul-*

*Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (citing *M.L.B. v. S.L.J.*, 117 S.Ct. 555 (1996); *Boddie v. Connecticut*, 91 S.Ct. 780 (1971)). "[E]ntitlement to monetary damages for negligence … has never been held to be a fundamental right under the United States Constitution." *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 52 (3d Cir. 1985). Here, potential victims of medical malpractice such as Appellants who are in a delayed discovery situation do not represent a suspect class and no fundamental human interests are at stake.[6]

Accordingly, the trial court correctly concluded that the appropriate standard to be applied is the "rational basis" test. A two-step analysis is required when applying the rational basis test:

> First, we must determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests.

*Commonwealth v. Albert*, 758 A.2d 1149, 1152 (Pa. 2000). Classifications will be upheld as constitutional if directed towards a legitimate governmental interest, "in a manner which is not arbitrary or unreasonable."

---

[6] Appellants provide no legal support for their alternate contention that intermediate scrutiny is more appropriate here than a rational basis analysis. Appellants' Brief a 21. We note that intermediate scrutiny has generally been applied to discriminatory classifications based on sex or illegitimacy, and therefore is inappropriate. *See Commonwealth v. Scarborough*, 89 A.3d 679, 686 (Pa. Super. 2014) (citing *Clark v. Jeter*, 108 S.Ct. 1910 (1988)).

- 10 -

*Fischer v. Dep't of Public Welfare*, 502 A.2d 114, 123 (Pa. 1985). "A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification. *Commonwealth v. Albert*, 758 A.2d 1149, 1151–52 (Pa. 2000) (citing *Federal Communications Commission v. Beach Communications, Inc.*, 113 S.Ct. 2096, (1993)).

The Legislature explained that its purpose in enacting the MCARE Act was "to ensure that medical care is available in this Commonwealth through a … high-quality health care system," and to maintain the system through ensuring that "medical professional liability insurance" was "obtainable at an affordable and reasonable cost[.]" 40 P.S. § 1303.102(1)-(3). The declaration of policy also noted the importance of prompt determinations and fair compensation for individuals injured or killed as a result of medical malpractice and the need "to reduce and eliminate medical errors" and "implement solutions to promote patient safety." *Id*. at (4)-(5).

The government has a legitimate interest in prompt determinations of medical negligence and fair compensation to its victims. In the instance where a foreign object is left in a patient, it is conceivable that commencing an action may take more time than the seven years generally allotted. The foreign object exception recognizes and clearly defines a group of patients

where negligence is implied *res ipsa loquitur*[7], and the passage of time does little to diminish the evidence underlying the claim. Although Appellants align themselves with patients in the foreign object classification, the same observation of the durability of evidence cannot be made in other delayed discovery cases. Specifically, in foreign object cases, the evidence of the negligence is nestled within the victim until eventual discovery, whereas, in other varieties of delayed discovery cases, the passage of time can erode the credibility of eye-witness testimony, causal relationships, and the availability of documentation.

The ability to sue in delayed discovery of potential negligence cases outside of the foreign object classification would expose health care providers to further liability, undermining the equally legitimate government interest of keeping medical professional liability insurance affordable for the benefit of citizens of this Commonwealth, and would do so in a manner that would likely involve stale evidence:

> Statutes of limitations, which are found and approved in all systems of enlightened jurisprudence, represent a pervasive legislative judgment that it is unjust to fail to put the adversary

_____

[7] *See Fessenden v. Robert Packer Hosp.*, 97 A.3d 1225, 1232 (Pa. Super. 2014) (noting Pennsylvania "courts long have cited the proverbial 'sponge left behind' case as a prototypical application of *res ipsa loquitur*" (citing *Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134, 1138, n.1 (Pa. 1981) ("[T]here are other kinds of medical malpractice, as where a sponge is left in the plaintiff's abdomen after an operation, where no expert is needed to tell the jury that such events do not usually occur in the absence of negligence.").

on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*U. S. v. Kubrick*, 100 S.Ct. 352, 356-57 (1979) (internal citations omitted).

Appellants further assert that the foreign object exception in the MCARE Act statute of repose is arbitrary and capricious; we disagree. While this exception may not represent the only scenario in which a potential medical malpractice victim would experience a delay in the discovery of negligence, our General Assembly provides a mechanism for fair compensation to patients who almost presumptively experienced negligence. Thus, the exception afforded the foreign object class is reasonably related to the legitimate purpose of ensuring that injuries resulting from medical negligence are determined promptly and that injured individuals are compensated fairly. To the extent Appellants argue other exceptions to the MCARE Act statute of repose should be recognized, that is not for our Court to decide. Accordingly, we discern no error in the trial court's conclusion that the MCARE Act statute of repose does not violate the equal protection clause.

Appellants assert in their second claim that the MCARE Act statute of repose violates the due process protections of the United States and Pennsylvania Constitutions.[8] Appellant's Brief at 34-40. No relief is due.

The guarantees associated with the due process clause of the federal constitution are analyzed the same as and are coextensive with those under the Pennsylvania Constitution. *Pennsylvania Game Commission v. Marich*, 666 A.2d 253 (Pa. 1995). Where laws restrict rights protected under Article 1, § 1, which are not fundamental, Pennsylvania courts apply a rational basis test. *Nixon v. Commonwealth*, 839 A.2d 277, 287 (Pa. 2003). To pass a rational basis test, the law at issue "must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained." *Gambone v. Commonwealth*, 101 A.2d 634, 636-37 (Pa. 1954). Additionally, a statute of repose does not violate due process if the limitation period is otherwise reasonable. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 555 (3d Cir. 1985).

As noted previously, the right of access to courts is not fundamental. *Kranson*, 755 F.2d at 52. Further, Appellants' due process claim must fail because here the period is reasonable. The seven-year limitations period

---

[8] The due process clause of the Fourteenth Amendment of the United States Constitution prohibits a state from depriving an individual of "life, liberty or property without due process of law." U.S. Const. amend XIV, § 1.

balances the Legislature's initiative to provide affordable, high-quality healthcare with providing fair compensation to victims of negligence. The MCARE statute of repose limits the exposure of medical providers; however, in creating specific exceptions for negligence foreseeably difficult to discover, the General Assembly promotes fair compensation for negligence victims. Accordingly, Appellants' due process rights were not offended.

Appellants also contend that the MCARE Act statute of repose violates Article I, § 11 of the Pennsylvania Constitution, which guarantees "open courts" and provides that individuals "shall have remedy by due course of law, and right and justice administered without sale, denial or delay" for injuries suffered. Appellants' Brief at 40-45; *see* Pa. Const. art. I, § 11. Our Supreme Court has previously rejected an open courts argument in the context of statutes of repose, as Section 11 does not prohibit the Legislature from abolishing a common law right of action without enacting a substitute means of redress. *Freezer Storage, Inc. v. Armstrong Cork Co.*, 382 A.2d 715, 720 (Pa. 1978); *see also Columbia Gas of Pennsylvania, Inc. v. Carl E. Baker, Inc.*, 667 A.2d 404, 410 (Pa. Super. 1995). As such, the trial court properly concluded that the MCARE Act statute of repose was constitutional.

Lastly, Appellants' entreat this Court to hold that a physician has a continuing duty to inform a patient of test results and that the MCARE Act repose period should begin only upon discovery of the results. Appellant's

Brief at 45. We decline to do so. Appellants concede that there is no precedent in this Commonwealth for the proposed finding but argue that health care providers undertaking a course of treatment should be obligated to complete it at the risk of incentivizing failures to disclose. *Id*. at 45-51. The cases cited by Appellants in support of this proposition are inapposite, as they are predicated on a theory of "continuous treatment." Even if applicable, this doctrine, unrecognized in Pennsylvania, would be unavailable to Appellants as they did not assert a continuing relationship with Appellees. *See*, *e.g.*, *McCullogh v. World Wrestling Entertainment, Inc.*, 172 F.Supp. 3.d 528, 551 (D. Conn. 2016); *Harlfinger v. Martin*, 754 N.E.2d 63, 75 (Mass. Supp. Ct. 2001). No relief is due.

Accordingly, Appellants' arguments failed to circumvent the applicable MCARE Act statute of repose, where it was undisputed that the alleged negligence occurred in September 2003, twelve years prior to Appellants' complaint in December 2015. We discern no error in the trial court's decision to enter judgment on the pleadings to Appellees, as a trial would clearly be a fruitless exercise. *Milner*, 538 A.2d at 31; *Olczak*, 797 A.2d at 345.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/26/2017